<u>*NOT FOR PUBLICATION*</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DAVID W. TUYTJENS,

            Petitioner,

v.

UNITED STATES OF AMERICA,

            Respondent.

Civil Action No. 13-7597 (MAS)

**OPINION**

<u>**SHIPP, District Judge**</u>:

*Pro se* Petitioner David W. Tuytjens, confined at a Federal Correctional Institution in Elkton, OH, files the instant Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Motion"), challenging the sentence imposed by this Court on December 12, 2012 for a child pornography offense. (*U.S. v. Tuytjens*, No. 12-cr-563 (D.N.J. filed Jun. 27, 2012) ("Crim. Dkt.").) For reasons stated below, the Court denies the Motion.

        **I.**      **FACTUAL BACKGROUND**

In 2002, Petitioner was convicted and sentenced to 13 years imprisonment, by the State of New Jersey, for first and second degree sexual offenses against a victim less than 13 years of age. (ECF No. 1 at 12; ECF No. 1-1 at 5.) Because Petitioner was convicted as a sex offender, under a New Jersey law, known as the Megan's Law, he was subject to a special statutory provision that required him to be under Community Supervision for Life ("CSL"). *Id.*; *see* N.J. Stat. Ann. § 2C:43-6.4. Petitioner was released from custody in 2010, but in 2011, under a routine search of his computer by his parole officer, Petitioner was found to be in possession of child pornography material. (ECF No. 1-1 at 5.) Petitioner also admitted to attempts to conceal

his pornographic activities by the use of certain eraser software. *Id.* As possession of pornographic material is a violation of the CSL, Petitioner was indicted by a grand jury for three counts of violations under N.J. Stat. Ann. § 2C:43-6.4(d). (ECF. No. 1-1 at 7.) Petitioner pled guilty to the charges and was sentenced to one year imprisonment. (ECF No. 1 at 12.)

Upon the completion of his state sentence in 2012, Petitioner was arrested by Respondent and charged with violations of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2), for possession of child pornography. (Crim. Dkt. ECF No. 1.) Again Petitioner pled guilty to the offenses, (Crim. Dkt. ECF No. 13.), and this Court sentenced him to 120 months imprisonment and 5 years of supervised release. (Crim. Dkt. ECF No. 15.) The plea agreement contained a routine waiver provision that stated:

> DAVID W. TUYTJENS knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 28. This Office will not file any appeal, motion, or writ which challenges the sentence imposed by the sentencing court if that sentence falls within or above the Guidelines range that results from the agreed total Guidelines offense level of 28. The parties reserve any right they may have under 18 U.S.C. § 3742 to appeal the sentencing court's determination of the criminal history category. The provisions of this paragraph are binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, if the sentencing court accepts a stipulation, both parties waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so.

(Crim. Dkt. ECF No. 13 at 10-11.)

Petitioner then filed the instant Motion. Specifically, Petitioner alleges that his federal conviction was in error, because it violated the Petite Policy under the United States Attorney's Manual ("USAM") § 9-2.031 ("Policy"), which states that "[t]his policy precludes the initiation or continuation of a federal prosecution, following a prior state or federal prosecution based on

substantially the same act(s) or transaction(s)" unless certain special circumstances are met. USAM § 9-2.031(A). The Policy also requires approval to be sought before prosecution can be brought. USAM § 9-2.031(E). Petitioner contends that Respondent failed to follow the Policy in initiating its prosecution of Petitioner, and that the prosecution is a violation of the Double Jeopardy Clause.

## II. STANDARD OF REVIEW

A prisoner in federal custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" or (3) "that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See U.S. v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *U.S. v. Frady*, 456 U.S. 152, 166 (1982), *cited in U.S. v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014). In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *U.S. v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted). "It is the policy of the courts to give a liberal construction to *pro se* habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010). The Court may dismiss the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b);

*Liu v. U.S.*, No. 11–4646, 2013 WL 4538293, at *9 (D.N.J. Aug.26, 2013) (citing *Booth*, 432 F.3d at 545–46).

### III.   DISCUSSION

Petitioner raises four grounds for relief in his Motion: (1) Respondent violated his rights under the Double Jeopardy Clause of the Fifth Amendment by initiating a prosecution against him after there had already been a state conviction for the same acts; (2) Respondent committed prosecutorial misconduct by initiating prosecution against him in violation of the Policy; (3) selective prosecution; and (4) the waiver provision of his plea agreement is not enforceable, as it is a violation of Article I, Section 9, Clause 2 of the U.S. Constitution. The Court also construes the Motion as raising an ineffective assistance of counsel claim.[1] The Court addresses each ground separately below.

### A. Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment provides, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "[I]t protects against successive prosecution for the same offense after acquittal or conviction and against multiple criminal punishment for the same offense." *Monge v. California*, 524 U.S. 721, 728 (1998). However, under the Dual Sovereignty doctrine, "a state prosecution does not bar a subsequent federal prosecution for the same conduct." *U.S. v. Piekarsky*, 687 F.3d 134, 149 (3d

---

[1] Although Petitioner acknowledges that his Motion may be construed as raising an ineffective assistance of counsel claim, (ECF No. 11 at 3), he nevertheless disavows raising such a claim. *Id.* ("With respect to the non-existent claim of ineffective assistance of counsel . . . [Petitioner] will not preoccupy the Court rebutting the AUSA's fabrication of a claim he is not making"). However, since *pro se* pleadings are to be construed liberally, *see Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013) (citing *McNeil v. U.S.*, 508 U.S. 106, 113 (1993)), out of an abundance of caution, the Court still construes the Motion as raising an ineffective assistance of counsel claim.

Cir. 2010); *see also Abbate v. U.S.*, 359 U.S. 187, 194 (1959). "The doctrine . . . is a recognition of the fact that the states and the federal government are separate sovereigns, with distinct interests in criminalizing and prosecuting certain conduct." *Id.*

Here, Petitioner claims that his state conviction barred Respondent from prosecuting him for the child pornography offense. However, the above case law shows that the Dual Sovereignty doctrine clearly allows Respondent to prosecute Petitioner for the same conduct regardless of whether there was a state prosecution. The Petitioner's argument seems to be that the Policy *created* a right under the Double Jeopardy Clause, but as courts have made clear, the Policy is not constitutionally mandated. *Rinaldi v. U.S.*, 434 U.S. 22, 28 (1977); *see U.S. v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005). As such, the Court holds that Respondent's prosecution of Petitioner was not a violation of the Double Jeopardy Clause.

### B. Prosecutorial Misconduct

Petitioner claims that Respondent committed prosecutorial misconduct by prosecuting Petitioner in violation of the Policy. At the outset, and for reasons explained in more detail below, the Court agrees with Respondent that the waiver provision of Petitioner's plea agreement bars Petitioner from raising this claim on collateral review. *See U.S. v. Mabry*, 536 F.3d 231, 238-39 (3d Cir. 2008). Nevertheless, even if the Court finds that Petitioner is not barred from raising this claim, the claim still fails.

The Policy expressly states that,

> [t]his policy has been promulgated solely for the purpose of internal Department of Justice guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, that are enforceable at law by any party in any matter, civil or criminal, nor does it place any limitations on otherwise lawful litigative prerogatives of the Department of Justice.

USAM § 9-2.031(F). In that regard, the Third Circuit has clearly held that the Policy does not create enforceable rights for criminal defendants. *Wilson*, 413 F.3d at 389 ("[A]lthough we do not endorse the Department's failure to follow its own policies, particularly in cases such as this one that raise double jeopardy concerns, we are constrained to conclude that any such failure that may have occurred here nevertheless does not mandate (or even allow) relief for [defendant]").

Here, since the Policy does not create any enforceable rights for Petitioner, and there is no mandate that Respondent must follow its own policies, the Court finds that there can be no prosecutorial misconduct.

### C. Selective Prosecution

The Court must point out again that the waiver provision similarly bars Petitioner from asserting a selective prosecution claim on collateral review. However, even if the Court is to address Petitioner's claim on the merits, the claim fails.

"A selective-prosecution claim asks a court to exercise judicial power over a 'special province' of the Executive." *U.S. v. Armstrong*, 517 U.S. 456, 464 (1996). "The Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *Id.* "As a result, the presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id.* (citations and quotations omitted). "In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.* (citations and quotations omitted).

"To establish selective prosecution, the defendant must 'provide evidence that persons similarly situated have not been prosecuted' and that 'the decision to prosecute was made on the

basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor.'" *U.S. v. Taylor*, 686 F.3d 182, 197 (3d Cir. 2012) (quoting *U.S. v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989)). "The defendant bears the burden of proof, and must establish each of these elements with 'clear evidence' sufficient to overcome the presumption of regularity that attaches to decisions to prosecute." *Id.* (citing *Armstrong*, 517 U.S. at 464).

Here, Petitioner does not clearly allege a valid selective prosecution claim. Although Petitioner alleges that at least two individuals who were incarcerated for CSL violations were not prosecuted by the federal government, Petitioner does not identify what CSL violations they were incarcerated for, so it is impossible for the Court to determine if the federal government could have prosecuted them for any federal crime, let alone a child pornography offense similar to that committed by Petitioner.[2] Furthermore, Petitioner does not allege that the decision to prosecute him was for any unjustifiable standard or impermissible purpose; Petitioner simply points to random examples of cases where federal prosecution did not follow certain state convictions. "'[T]he conscious exercise of some selectivity in enforcement [of a statute] is not in itself a federal constitutional violation' so long as 'the selection was not deliberately based upon an unjustifiable standard.'" *Pickard v. U.S.*, 312 F. Supp. 2d 735, 745 (3d Cir. 2004) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). As such, the Court finds that Petitioner does not state a valid selective prosecution claim.

---

[2] For example, a defendant can be found in violation of the CSL for failing to complete mental health counseling deemed reasonably necessary by his parole officer. *See State v. Reeth*, Indictment No. 10-04-0699, 2014 WL 1613652, at *1 (N.J. Super. Ct. App. Div. Apr. 23, 2014). Any inmate incarcerated for such a CSL violation would not have been the subject of any federal prosecution.

7

### D. Waiver Provision

Petitioner claims that the waiver provision of his plea agreement violates Article I, Section 9, Clause 2 of the U.S. Constitution, which states that "[t]he privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or invasion of the public safety may require it." This is clearly contrary to established law. To begin, the writ of habeas corpus was not "suspended" in Petitioner's case; Petitioner voluntarily waived his right to file a writ of habeas corpus by consent. "Criminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *U.S. v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008). "[W]aivers of appeal, if entered into knowingly and voluntarily, are valid, unless they work a miscarriage of justice." *U.S. v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005). The standards set forth for waivers of appeal apply equally to waivers of the right to collateral review. *Simon v. U.S.*, No. 05-5503, 2006 WL 3534600, at *5 (D.N.J. Dec. 7, 2006). This Circuit applies the same "miscarriage of justice" standard to both waivers of appeal and waivers of collateral review. *See Mabry*, 536 F.3d at 242-43.

Here, the kind of standard waiver provision in Petitioner's plea agreement has been routinely upheld by this Court and by the Third Circuit. *See Mabry*, 536 F.3d at 238-39; *Wilson*, 429 F.3d at 458; *Gevers v. U.S.*, No. 12-1541, 2015 WL 337468, at *3-5 (D.N.J. Jan. 23, 2015); *Smith v. U.S.*, No. 10-2769, 2011 WL 2671515, at *4-7 (D.N.J. July 8, 2011). Furthermore, as the Court found above, no errors have been committed by Respondent, so there would be no miscarriage of justice if the waiver is deemed valid and enforceable. In fact, since the Court finds no error in Petitioner's conviction or sentence, the waiver provision is not outcome-determinative in the instant matter, so its enforceability, or the lack thereof, would not entitle Petitioner to relief. As such, the Court rejects Petitioner's claim for relief on this ground.

### E. Ineffective Assistance of Counsel

Finally, the Court addresses the ineffective assistance of counsel claim. Although the waiver provision, on its face, appears to preclude Petitioner from making *any* collateral attacks of his sentence, the Court may nevertheless consider a collateral attack for ineffective assistance of counsel if the ineffective assistance would have rendered the entire plea agreement unenforceable. *See U.S. v. Bui*, 769 F.3d 831, 834 (3d Cir. 2014).

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness[.]" *Hinton v. Alabama*, 134 S.Ct. 1081, 1083 (2014) (per curiam). To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.[3] To establish prejudice, the defendant must show that "there is a reasonable

---

[3] The reasonable probability standard is less demanding than the preponderance of the evidence standard. *See Nix v. Whiteside*, 475 U.S. 157, 175 (1986); *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).

9

probability that the result of the trial would have been different absent the deficient act or omission." *Hinton*, 134 S.Ct. at 1083.

The same two-part standard is applicable to ineffective assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In the plea context, "counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer." *Bui*, 769 F.3d at 835. The defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *U.S. v. Jesus-Nunez*, 576 F. App'x 103, 106 (3d Cir. 2014) (quoting *Hill*, 474 U.S. at 59).

Here, the Court construes the Motion as making a claim that if Petitioner's counsel had been sufficiently knowledgeable about the Policy, and informed Petitioner of such Policy, Petitioner would not have agreed to the plea agreement. The Court disagrees. Although it is plausible that Petitioner may have changed his mind had he been informed of the Policy, there was nothing unreasonable about Petitioner's counsel's conduct. As Court noted above, Respondent has broad discretion in its prosecutorial decisions, and there is a presumption of validity whenever there has been a decision to prosecute. Furthermore, as stated above, the Policy itself is completely discretionary and creates no enforceable rights. There was no reason for counsel to question Respondent's decision to prosecute, under the assumption that Respondent knew of its own Policy and adhered to it, nor was there any reason for counsel to believe that even if he confronted Respondent with regard to the Policy, the result would have been any different. *See Hade v. U.S.*, No. 13-0111, 2014 WL 1125364, at *4 (D. Md. Mar. 19, 2014) (holding that defense attorney did not err in not challenging the prosecution for violating the Policy because "the Government's alleged failure to follow the Petite Policy is of no moment because Defense Counsel could not have compelled the Government to follow the policy"). Indeed, as Respondent's Answer makes

clear, Respondent did not consider the Policy to be applicable in the criminal case. (ECF No. 10 at 8.) Absent extenuating circumstances, none of which are alleged by Petitioner, there was simply nothing objectively unreasonable about counsel's choice not to address the Policy with Petitioner. As such, Petitioner has not satisfied the first prong of the *Strickland* test.

The Court also finds that the claim does not satisfy the second prong of the *Strickland* test. It is evident from Respondent's Answer that Respondent did not consider the CSL violation as a state conviction, but instead as a state parole violation.[4] *Id.* As the Court found above, there was no obligation nor mandate on Respondent to follow the Policy. Even if the Court vacates the plea agreement and reopens the criminal case, purely on the fact that Petitioner was not informed about the Policy, nothing in the record indicates that Respondent wouldn't simply just offer Petitioner the same plea agreement again, now that Petitioner is fully informed. Petitioner would be faced with the decision of whether to accept the plea agreement under essentially the exact same scenario and conditions as before, with the possibility that Respondent may seek additional charges or a harsher sentence against Petitioner if he rejects the plea. *See U.S. v. Fields*, No. 03-CR-317, 2010 WL 2431830, at *3 (M.D. Pa. Jun. 14, 2010) ("[I]t is pure speculation for Petitioner to argue that if his counsel had challenged the Petite policy waiver, the results of his case would have been different"). Accordingly, the Court finds that it is not reasonably probable that the outcome of the case would be different.[5] As such, to the extent Petitioner's allegations smack of ineffective

---

[4] Although the Court has some reservations regarding Respondent's interpretation of the CSL violation as a parole violation and not as a state conviction, the Court need not reach a definitive conclusion on this issue as it is not before the Court, and it in no way affects the outcome of this case.

[5] The only plausible outcome that could be different is if Respondent chooses to withdraw the indictment against Petitioner, something the Court does not have the power to direct Respondent to do. As the Court noted above, based on the record and Respondent's own

11

assistance, Petitioner does not satisfy either prong of the *Strickland* test, and the Court finds that the Motion fails to state a valid ineffective assistance of counsel claim.

### F. Certificate of Appealability

Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B). *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

### IV. CONCLUSION

For the reasons set forth above, Petitioner's Motion is DENIED and the Court denies a certificate of appealability.

/s/ Michael A. Shipp
Michael A. Shipp, U.S.D.J.

Dated: 2/25/15

---

Answer, Petitioner has not demonstrated that it is reasonably probable that such an outcome would occur.